IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

Renita Hill,

   Plaintiff,

v.

Walmart, Inc.,

   Defendant.

## Complaint

The plaintiff, Renita Hill ("Plaintiff" or "Ms. Hill"), by and through her attorneys, brings claims against defendant, Walmart, Inc. for discrimination based on race and religion and for retaliation pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

## Jurisdiction and Venue

1. This Court's jurisdiction is invoked pursuant to Section 706(f) of Title VII, 28 U.S.C. §§451, 1331, 1343, 1367 and 42 U.S.C. Section 1988.

2. Plaintiff filed a Charge of Discrimination against Defendant, No. 443-2020-01469, with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and religion, and retaliation on or about May 7, 2020.

3. The EEOC issued Plaintiff a Notice of Right to Sue based on her Charge on May 24, 2021. Plaintiff files this action within ninety days of her receipt of the Notice of Right to Sue.

4. Venue is proper under 28. U.S.C. § 1391(b) and 42 U.S.C. 2000e-5(f)(3) because of the unlawful employment practices alleged occurred in the Southern District of Iowa.

## The Parties

5. Plaintiff is African-American and a practicing Methodist. She is a resident of this district and a former employee of Walmart.

6. Defendant Walmart is a for-profit corporation properly recognized and sanctioned by the laws of the State of Iowa and is incorporated in the State of Delaware with its principal place of business in the State of Arkansas. At all times relevant hereto, Defendant has conducted and continues to conduct business in the Southern District of Iowa. Defendant is engaged in an industry that affects commerce and is an employer as defined in 42 U.S.C. Section 2000e(b).

## Facts Common to All Claims

7. Ms. Hill was first hired by Walmart as a temporary cashier at the Keokuk, Iowa location (the "Store") on May 2, 2006.

8. Ms. Hill was a strong performer who very slowly rose through the ranks of the "front end" of the Store." She earned a promotion to Customer Service Manager in 2015 and Lead Customer Service Manager in 2017.

9. Upon information and belief, the Store management used social media and the local grapevine to find out the race of job applicants prior to granting them an interview, in violation of Walmart policy. The occasional African American who was hired at the Store did not advance, was routinely harassed and/or discriminated against, and usually quit or was fired. During the nearly fourteen years of her employment, Ms. Hill was the only African American management employee at the Store.

10. In 2018, Walmart hired Richard Yates as Store Manager. Mr. Yates is Caucasian.

11. Given her extensive experience at the "front end" of the Store, Ms. Hill regularly served as a resource for Mr. Yates on customer/personnel issues, policies, and procedures related to the front end of the store.

12. Mr. Yates made a number of personnel changes in the store once he was hired. For example, without posting a position opening, he promoted Assistant Manager Caitlin Roberts, who is also white, to Front End Coach in late 2019, so that she directly supervised the more experienced and more qualified Ms. Hill. As Front End Coach, Ms. Roberts reported directly to Mr. Yates and oversaw the entire front end. Despite her superior qualifications, Mr. Yates never approached Ms. Hill about promoting her as Front End Coach. Ms. Hill closely trained Ms. Roberts on the "front end" when she was promoted.

13. Mr. Yates also promoted Assistant Manager Shea Baugher, who is also white, to Asset Protection Lead. Upon information and belief, before and after the

promotion, Mr. Baugher repeatedly made racist comments in the presence of management, including Mr. Yates. Upon information and belief, Mr. Baugher was never reprimanded or disciplined by Mr. Yates for his racist remarks.

14. Mr. Yates also regularly tolerated other discriminatory behavior of staff that occurred at the Store. For example, Associate Kevin Gregory openly and routinely targeted and followed black customers who came into the Store, and directed other employees to do the same. At times, Mr. Gregory also requested that Ms. Hill identify the different black customers whose photos he showed her, assuming that she would know them. The Store frequently received complaints from both staff and customers about Mr. Gregory's discriminatory behavior, but Mr. Yates failed to address them.

15. After Mr. Yates was hired to the Store, he repeatedly suggested to Ms. Hill that she transfer to other Walmart locations that had a greater African-American presence.

16. During the majority of her time working for Defendant, including before Mr. Yates' time as Store Manager, Ms. Hill received Sundays off as a religious accommodation so that she could attend church.

17. In late 2019, Ms. Hill applied for a promotion to Front End Lead. This position's responsibilities overlapped greatly with Ms. Hill's then-position of Lead Customer Service Manager. Ms. Hill renewed her religious accommodation request when she interviewed for the job.

18. Soon thereafter, Mr. Yates initiated a casual interview of Ms. Hill for the Front End Lead position in the parking lot of the Store. During the ensuing conversation, Ms. Hill raised the concern that African-Americans were not being hired or promoted at the Store. Mr. Yates responded with aggravation, saying that he was "tired of people thinking" he was racist. He said he had a person of color in his family, and strangely told Ms. Hill he "did not consider" her to be black even though she is visibly black. Ms. Hill found this assertion surprising, and asked what color Mr. Yates thought she was, which he did not answer.

19. Upon information and belief, in conversation with members of management, Mr. Yates called Ms. Hill's religious practice and religious accommodation request "a bunch of crap" and "stupid." He also stated to one Assistant Manager that because of the religious accommodation, he did not want to promote Ms. Hill or keep her in the Store. Mr. Yates stated that working on Sundays was a "requirement" of the Front End Lead position.

20. Ultimately, Mr. Yates and Ms. Roberts hired Daniel Harmon to the position. Mr. Harmon is white and did not request a religious accommodation when he applied or interviewed for the job. Mr. Harmon was less qualified for the position than Ms. Hill and had no previous retail experience.

21. When Mr. Harmon assumed the Front End Lead position, he was not required to work on Sundays. Because of his inexperience, Ms. Hill routinely assisted Mr. Harmon in his role.

22. Ms. Roberts, who directly supervised Ms. Hill, also regularly tolerated and engaged in discriminatory behavior at the Store. For example, Ms. Roberts regularly rolled her eyes at and spoke in a harsher tone to Ms. Hill than she did to other employees. She also subjected Ms. Hill to unwarranted reprimands shortly before Ms. Hill's termination.

23. As another example, Ms. Roberts scheduled Ms. Hill, the only black manager at the Store, for long shifts where she was the only Customer Service Manager on duty, which resulted in her being unable to take a break for seven or eight hours at a time. White Customer Service Managers were not normally scheduled in this way.

24. Significantly, prior to Ms. Hill's shift, the service desk staff regularly left Ms. Hill's service desk a mess with the expectation that Ms. Hill would clean it up every morning. She regularly did clean it up but complained to management about this repeated occurrence, which she stated to Ms. Roberts she knew was tolerated because she was black. Upon information and belief, Ms. Roberts and Mr. Harmon encouraged management on the night shift to leave the service desk a mess, stating to the night shift management that Ms. Hill would "come in the morning" and clean or "fix" everything.

25. When Ms. Hill complained about the discriminatory behavior, she was written up and called "disrespectful" by Ms. Roberts.

26. Throughout her employment, Ms. Hill periodically raised concerns about the discriminatory behavior she and others experienced, the lack of diversity of the

staff, and poor treatment of black staff. Upon information and belief, the Store never conducted an investigation into her complaints of discrimination, nor did it meaningfully address any of her complaints.

27. Upon information and belief, at least one Assistant Manager regularly communicated Ms. Hill's discrimination concerns in daily management meetings, to no constructive response. In hearing about Ms. Hill's discrimination complaints, both Mr. Baugher and Ms. Roberts would complain about, belittle, and condemn Ms. Hill's airing of her discrimination concerns.

28. Specifically, upon hearing about Ms. Hill's concerns, Ms. Roberts would complain to others that Ms. Hill was "making . . . a race issue." Mr. Baugher was also heard to cast disapproval on Ms. Hill for "always complaining" about racial discrimination.

29. On or about March 9, 2020, Ms. Hill complained to Ms. Roberts and Ms. Touman about how the staff from the night shift left the office and service desk in terrible condition for her to clean again. On or about March 13, Ms. Hill was called into Mr. Baugher's office and told she was being terminated for signing into cash registers with another employee's credentials.

30. Upon information and belief, Mr. Yates, Ms. Roberts, Mr. Baugher, and Mr. Horman participated in the decision to terminate Ms. Hill.

31. The reason provided for Ms. Hill's termination is not worthy of belief.

32. Ms. Hill is a manager and her job duties required her to use a manager override for certain transactions like large returns, and there were different

reasons she would need to use another employee's logged-in register for these override functions.

33. Non-black employees who had not complained about discrimination and had not sought religious accommodations were not terminated for the same or similar offenses. For example, other non-black managers such as Mr. Baugher and Ms. Roberts went so far as to regularly and carelessly share their log-in information with other employees who would sign into cash registers with management's credentials contrary to the same Walmart policy that allegedly led to Ms. Hill's termination. These managers and employees were not similarly terminated from their employment with Walmart.

34. Ms. Hill was terminated on March 13, 2020 and replaced with a less qualified white employee.

Count I
Section 1981 Race Discrimination

35. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

36. By subjecting her to inferior job conditions, denying her a promotion, and terminating her employment, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by white citizens in the creation, performance, modification, enjoyment, benefits, privileges, and terms and conditions of her contractual employment relationship in violation of 42 U.S.C. § 1981.

37. As a result of Walmart's discrimination in violation of Section 1981, Ms. Hill has been denied employment opportunities providing substantial

compensation and benefits, thereby entitling her to injunctive and equitable monetary relief.

38. Ms. Hill has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Walmart's actions, thereby entitling her to compensatory damages.

39. In its discriminatory actions as alleged, Walmart has acted with malice or reckless indifference to the rights of Ms. Hill, thereby entitling her to an award of punitive damages.

## Count II
## Title VII Race Discrimination

40. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

41. During the course of Plaintiff's employment, Defendant intentionally discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq.

42. Defendant treated Plaintiff differently than similarly situated individuals who were not African American with respect to the terms and conditions of her employment, when they subjected her to inferior working conditions, denied her promotions in favor of less qualified white employees, and selectively disciplined and terminated her.

43. As a proximate result of the practices alleged herein, Plaintiff has suffered substantial and irreparable injury, and requests that the Court award her the relief prayed for below.

## Count III
## Title VII Religious Discrimination

44. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

45. During the course of Plaintiff's employment, Defendant intentionally discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq.

46. Defendant subjected Plaintiff to an adverse employment action when it denied her a promotion due to her religious affiliation, religious practice, and accommodation request, and when it terminated her.

47. Defendant treated Plaintiff differently than other similarly situated employees when it misrepresented job requirements to exclude her because of her religious practice and promoted a less qualified employee who did not share Plaintiff's protected status.

## Count IV
## Title VII and Section 1981 Retaliation

48. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

49. Plaintiff engaged in statutorily protected activities when she repeatedly complained about Defendant's racial and religious discrimination and retaliation, and when she requested a religious accommodation.

50. During the course of her employment, Defendant intentionally retaliated against Plaintiff for her protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et. seq.

51. Defendant treated other similarly situated employees who did not engage in protected activity and complain about discrimination and retaliation differently.

52. Defendant terminated Plaintiff's employment on the heels of her protected activity.

53. Because of the practices alleged herein, the Plaintiff suffered lost wages, irreparable damage to her career, emotional distress, and incurred attorney fees.

Count VI
Iowa Civil Rights Act Discrimination and Retaliation

54. All of the allegations in the foregoing paragraphs are incorporated by reference as if fully set out herein.

55. Defendant violated Iowa law when it failed to promote and terminated Plaintiff's employment for discriminatory reasons, including her race and religious practices, and in direct consequence of her engaging in protected activity at the Store, including her request for a reasonable religious accommodation.

56. Plaintiff reasonably believed Defendant acted in violation of Iowa law and public policy through failure to hire and promote qualified black candidates

and through maintenance of a discriminatory environment that degraded the conditions of African-Americans' employment at the Store.

WHEREFORE Plaintiff respectfully requests:

- All wages and benefits she would have received but for the discrimination and retaliation;
- Compensatory damages;
- Punitive damages;
- Prejudgment interest;
- Attorneys' fees and costs; and
- Such other relief as law and justice allow.

## JURY DEMAND

Plaintiff requests trial by jury.

Dated: August 20, 2021

Respectfully submitted

David Albrecht AT0012635
Fiedler Law Firm, PLC
8831 Windsor Parkway
Johnston, IA 50131
515-254-1999
david@employmentlawiowa.com

s/ Yusra Gomaa
Kapitan Law Office, Ltd.
(pending pro hac vice admission)
P.O. Box 6779
Chicago, Illinois 60680
Phone: (312) 566-9590
Fax: (312) 566-9591
ygomaa@kapitanlaw.net